UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:07CV-00078-EHJ

MYRA A. HARRISON                                                          PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                       DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

### BACKGROUND

Before the Court is the complaint (DN 1) of Myra A. Harrison ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 12) and the defendant (DN 13) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 11) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered June 21, 2007 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

Plaintiff filed an application for Supplemental Security Income payments on April 28, 2004 (Tr. 51-53). Plaintiff alleged that she became disabled on July 15, 2003 as a result of

problems with her back, eyes and nerves (Tr. 16, 18, 51, 58). Administrative Law Judge Randolph E. Schum ("ALJ") conducted a hearing on July 7, 2006 in Bowling Green, Kentucky (Tr. 322). The plaintiff was present and represented by attorney Mary Burchett-Bower (Tr. 322). Also present and testifying was William Harpool as a vocational expert (Tr. 322).

In a decision dated August 10, 2006, the ALJ applied the five-step sequential evaluation process to plaintiff's disability claim (Tr. 16-23). At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since July 15, 2003, the alleged onset date (Tr. 18). At the second step, the ALJ found that plaintiff's alleged problems with her eyes and back pain are non-severe impairments within the meaning of the regulations (Tr. 18). The ALJ found that plaintiff's affective disorder is a "severe" impairment within the meaning of the regulations (Tr. 18-20). At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 20).

At the fourth step, in assessing plaintiff's residual functional capacity the ALJ found plaintiff has no exertional limitations (Tr. 20). The ALJ determined that plaintiff's mental impairment imposes moderate restrictions in her ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavior extremes; she can understand and remember simple instructions and somewhat more complex ones; she can sustain attention for two-hour segments over an eight-hour period to complete simple, repetitive tasks; she can respond appropriately to supervisors and co-workers in a task oriented setting where contact with the public is infrequent and she can adapt to routine changes (Tr. 20). After finding plaintiff is unable to perform any of her past relevant work, the ALJ proceeded to the fifth step in the

sequential evaluation process (Tr. 21).

At the fifth step, the ALJ considered plaintiff's age, education, past work experience, residual functional capacity and the testimony of the vocational expert (Tr. 21-22). The ALJ relied on the vocational expert's testimony to find plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 22). The ALJ concluded plaintiff had not been under a "disability," as defined in the Social Security Act, from April 28, 2004, the date the application was filed, through the date of the decision (Tr. 22-23).

Plaintiff timely requested Appeals Council review of the ALJ's decision (Tr. 13, 302-303). Plaintiff subsequently submitted a memorandum in support of her request for review (Tr. 306-311). She also submitted a report and mental functional assessment prepared by Ollie C. Dennis, Ed.D., who performed a consultative psychological examination on August 23, 2006 (Tr. 312-321). The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7). Notably, the Appeals Council found the additional information from Dr. Dennis did not provide a basis for changing the ALJ's decision (Tr. 5-6).

## CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human

4

Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff has made a number of challenges to findings the ALJ made at the second and fourth steps in the sequential evaluation process (DN 12). After a careful review of the evidence in the record, the ALJ's decision, and the arguments of the parties (DN 12, 13), the undersigned concludes findings the ALJ made at the second and fourth steps regarding plaintiff's mental impairment are not supported by substantial evidence in the record and do not comport with applicable law. Therefore, the Court should reverse the final decision of the Commissioner and remand the case for further administrative proceedings.

At the second step, the ALJ found plaintiff's affective disorder is "severe" within the meaning of the regulations (Tr. 18-20). 20 C.F.R. §§ 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (*per curiam*). Notably, in making his findings at this step, the ALJ gave great weight to the December 29, 2004, opinions of a non-examining State agency psychologist, Stephen Scher, Ph.D. (Tr. 19, 20).

Based upon Dr. Scher's opinions, the ALJ found the mental impairment "significantly limits"[1] plaintiff's ability to do one or more basic work activities because it imposed a "mild" degree of limitation in activities of daily living; a "moderate" limitation in maintaining social functioning; a "mild" limitation in maintaining concentration, persistence, or pace; and because plaintiff "had not experienced episodes of decompensation of an extended duration as defined in the Regulations" (Tr. 20, 229).

The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of a non-examining State agency physician or psychologist is generally entitled to the least weight of all. 20 C.F.R. §§ 416.927(d)(1), (d)(2), and (f); Social Security Ruling 96-6p. However, when the opinion of a non-examining State agency physician or psychologist is consistent with the evidence of record it represents substantial evidence to support an Administrative Law Judge's finding. 20 C.F.R. § 416.927(f); Social Security Ruling 96-6p; Atterbery v. Secretary of Health and Human Services, 871 F.2d 567, 570 (6th Cir. 1989).

Here, the evidence in the record is not consistent with Dr. Scher's opinion that the

---

[1]The determination whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of limitation in four broad mental functioning areas. 20 C.F.R. § 416.920a(c)(3). These four broad mental functioning areas are as follows: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). The degree of limitation in the first three mental functioning areas is rated according to the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). The degree of limitation in the fourth area of mental functioning is rated according to the following four-point scale: none, one or two, three, four or more. 20 C.F.R. § 416.920a(c)(4).

6

number of episodes of decompensation[2] plaintiff has experienced is "none" (Tr. 229). In reaching his opinion Dr. Scher was under the mistaken belief that September 2000 is plaintiff's most recent hospitalization due to her mental impairment (Tr. 236). The evidence in the record indicates otherwise.

On September 15, 2000, plaintiff was involuntarily admitted to Western State Hospital on a seventy-two hour commitment order because she expressed consideration of self harm (Tr. 142-165). At the time of admission doctors assigned a Global Assessment of Functioning ("GAF") of 40 (Tr. 152).[3] A GAF rating of 31-40 means "[s]**ome impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g.,

---

[2]For the purposes of this analysis the undersigned finds the following regulatory definition particularly relevant:

> "*Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode."

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

[3]The undersigned observes that the final diagnosis section of the discharge summary also indicates a current GAF of 40 (Tr. 146).

depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home and is failing at school)." *Diagnostic and Statistical Manual of Mental Disorders* at Page 34 (4th ed. TR 2000) ("DSM-IV-TR"). Plaintiff was discharged five days later on September 20, 2000 (Tr. 142). Clearly, this hospitalization is an episode of decompensation within the meaning of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

On September 20, 2001, plaintiff was admitted to the T.J. Samson Community Hospital as a result of an intentional overdose of her prescribed anti-depressant, Elavil (Tr. 166-180). The overdose was severe enough to induce a coma where plaintiff was non-responsive except to painful stimuli (Tr. 166, 171). Doctors intubated plaintiff and placed her on a ventilator (Tr. 166, 171). Plaintiff was released from the hospital on September 22, 2001 (Tr. 166). This appears to be a second episode of decompensation within the meaning of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

On November 24, 2003, plaintiff was again admitted to the T.J.Samson Community Hospital because she had not eaten anything in eight days (Tr. 181). In light of the treatment plaintiff received for her depression during this hospitalization, this appears to be a third episode of decompensation within the meaning of the regulations (Tr. 181-182). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

Additionally, in rendering his opinions on December 29, 2004, Dr. Scher gave great weight to the opinions expressed by Mohammad Safi, M.D. (Tr. 236). Dr. Safi performed a consultative psychological evaluation on December 11, 2004, and assigned a GAF rating of 65 (Tr. 236). However, Dr. Safi's opinions are questionable because he relies on an inaccurate history in

8

rendering his opinions. For example, Dr. Safi believed that plaintiff received inpatient treatment at Western State Hospital in the "early 90s" (Tr. 214). Further, he apparently was not aware of plaintiff's hospitalizations in September of 2001 for a drug overdose and November of 2003 for failing to eat for eight days (Tr. 214-217). Nor were Drs. Safi and Scher aware of the subsequently received records from LifeSkills that depict evaluation and treatment of plaintiff during the time frame July 6, 2004 through December 7, 2004 (Tr. 197- 202, 261-274). Moreover, the opinions of Drs. Safi and Scher are in conflict with the subsequently received treatment records and functional evaluations from LifeSkills which indicate more serious mental functional limitations (Tr. 246-291, 292-294, 300-301).

In sum, since the opinions of Dr. Scher, a non-examining State agency psychologist, are not consistent with the evidence of record, those opinions do not represent substantial evidence to support the ALJ's findings at the second step. 20 C.F.R. § 416.927(f); Social Security Ruling 96-6p. Furthermore, the opinions of Dr. Scher do not represent substantial evidence to support the ALJ's mental residual functional capacity findings at the fourth step (Tr. 20-21). Thus, the ALJ's reliance on Dr. Scher's opinions does not comport with applicable law. Social Security Ruling 96-6p.

Since the ALJ's mental residual functional capacity findings are not supported by substantial evidence, his hypothetical question to the vocational expert (Tr. 338-339) does not accurately portray plaintiff's mental limitations. Thus, the vocational expert's testimony does not constitute substantial evidence to support a finding that plaintiff is capable of performing a significant number of jobs in the national economy. See Bradford v. Secretary, Department of Health and Human Services, 803 F.2d 871, 874 (6th Cir. 1986) (a vocational expert's testimony can

constitute substantial evidence if it is based on a hypothetical question that accurately portrays the claimant's physical and mental impairments).

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the final decision of the Commissioner is not supported by substantial evidence in the record and does not comport with applicable law. Therefore, the undersigned recommends, pursuant to sentence four of 42 U.S.C. § 405(g), the Court reverse the final decision of the Commissioner and remand the case for further administrative proceedings.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and

recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir.), <u>aff'd</u>, 474 U.S. 140 (1984).

Copies:     Counsel